WATKINS *v.* LOUISIANA STATE LIFE INSURANCE COMPANY.

Opinion delivered February 6, 1922.

1. TRIAL—BOTH PARTIES REQUESTING DIRECTED VERDICT.—Where both parties ask for a peremptory instruction, and for no other instruction, they in effect submit the case to the court sitting as a jury, and the finding and judgment of the court, made under those circumstances, have the same effect as the jury's verdict would have had.

2. INSURANCE—PROOF OF DEATH IN MILITARY SERVICE.—Under Crawford & Moses' Dig. §§ 6157-8, the introduction of a certificate of the Adjutant General of the War Department that an insured person had died in battle while in the military forces of the United States was sufficient to support a finding that insured was killed while in the military service of the United States in time of war.

3. INSURANCE—EXTRA PREMIUM FOR INCREASED HAZARD.—A life insurance company had the right to charge an extra premium at the established rate for the increased hazard occasioned by the enlistment of the insured in the military service of the United States.

Appeal from Yell Circuit Court, Dardanelle District, *A. B. Priddy,* Judge; affirmed.

*Jno. B. Crownover,* for appellant.

The court erred in taking the case from the jury and rendering a judgment for the defendant. 95 Ark. 561; 71 Ark. 447; 76 Ark. 522; 73 Ark. 561; 89 Ark. 222; 89

Ark. 372; 63 Ark. 94; 77 Ark. 556; 36 Ark. 451; 35 Ark. 146; 62 Ark. 63; 8 Ark. 57.

Courts do not favor insurance forfeitures, nor do they regard with favor technical defenses.  20 Ark. 214; 67 Ark. 511; 67 Ark. 558; 21 Minn. 805; 23 Minn. 491; 32 N.Y. 405; 101 Mass. 558; 5 Ind. 103; 2 May on Insurance, sec. 361.

A contract of insurance is construed most strongly against the insurer.  58 Ark. 528; 67 Ark. 558; 80 Ark. 49; 86 Ark. 115; 89 Ark. 471; 94 Ark. 417.

*Wilson & Chambers,* and *Wilkinson, Lewis & Wilkinson,* for appellee.

The court did not commit any error in taking the case from the jury and in rendering judgment for defendant.  26 R. C. L. sec. 83, p. 1080; 100 Ark. 71; 139 Ark. 643; *Security Life Ins. Co.* v. *Bates,* 144 Ark. 345.

The policy was properly in evidence, and there was no error in permitting it to be read to the jury.  2 C. J. 1258; 1 R. C. L. p. 1033, sec. 68; 25 Cyc. 723.

SMITH, J. · Appellant is the beneficiary named in a policy of life insurance upon the life of her brother, Horace Vernon Collins, issued by appellee, hereinafter referred to as the company.  A copy of the policy was made an exhibit to the complaint, and on page 2 thereof appears a section numbered 5, which deals with the liability of the company in case of total disability on the part of the insured.  Section No. 12 provides: "This policy is free of conditions as to residence, travel or occupation.  No permit or extra premium will be required for military or naval service in time of war, or in time of peace."  On page 3 of the policy there is printed or stamped the following statement: "Military and Naval Service.—Any engagement in Military, Naval or Aerial service in time of war shall require the written permission of the company and the payment of an extra premium at the established rate.  Should the insured engage in such service, without the company's written permis-

sion, and his death occur while thus engaged, or as the result thereof, the liability of the company hereunder shall be limited to the then legal reserve under this policy. This modifies sections 5 and 12 of this policy.''

At the trial the company produced, and offered in evidence, an agreement purporting to have been signed by the insured on the day of his application and accompanying it, in which the insured expressly agreed that, if the rule of the company required it, any policy which the company should issue on his life should contain the clause which was inserted on page 3 of the policy set out above.

It is insisted that the testimony does not show that the insured signed this agreement, but that in any event that question should have been submitted to the jury.

At the conclusion of all evidence in the case, both sides asked for a peremptory instruction, and neither side asked for any other instruction. This, under our practice, is a withdrawal of the case from the jury and the submission of it to the court sitting as a jury, and the finding and judgment of the court, made under these circumstances, has the same binding effect the jury's verdict would have had, and will be affirmed by us if the testimony, viewed in the light most favorable to the prevailing party, is legally sufficient to support the verdict. *Security Life Ins. Co.* v. *Bates,* 144 Ark. 345; *St. L. S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71; *Webber* v. *Rogers,* 128 Ark. 25.

There was a finding and judgment for the plaintiff in the sum of $36.95, the legal reserve under the policy, and the plaintiff has appealed.

We are asked to reverse the judgment upon three grounds. The first ground is, that the court should have submitted to the jury the question whether the deceased came to his death while engaged in the military service of the United States in time of war. As to this assignment of error, it may be said that the question was submitted to the jury by the joint request for a peremptory

instruction, and the evidence certainly supports the court's finding that the insured was killed while thus engaged, as the proof of death was made by the production of the certificate of the Adjutant General of the War Department, as provided by §§ 6157 and 6158 of C. & M. Digest, which read as follows:

"Sec. 6157. From and after the passage of this act, it shall be competent and proper in the trial of all causes arising from death claims against insurance companies, accruing on account of death of the insured in foreign lands and while in the service of the United States government as a soldier in the army or navy of the United States, to introduce as evidence a certificate from the office of the Adjutant General of the United States certifying the death of the insured.

"Sec. 6158. When the certificate, as provided in § 6157 of this act, officially signed and certified, has been introduced in evidence in the trial of a cause as stated in § 6157 of this act, it shall be taken and received and considered in such trial as *prima facie* evidence of the death of the insured."

The Adjutant General's certificate, after its caption, reads as follows:

"The records of this office show that Horace V. Collins was enlisted May 27, 1918, at Danville, Arkansas, and was killed in action (by shell fire) on October 16, 1918, in battle of Verdun Sector while serving as a private, Company 1, 127 Infantry. At date of enlistment he gave his age as 25 years, 5 months, and the name and address of the person to be notified in case of emergency as Maude Collins Clinton, (sister), route No. 2, Danville, Arkansas."

It appears, therefore, that the instrument which proves the death of the insured also states the cause of his death and shows that he died a hero's death by being killed in the battle of Verdun.

The second assignment of error is that the court should have submitted to the jury the question whether

the insured signed the agreement which accompanied his application. As we have said, this question was, of course, submitted to the court as a jury, and the testimony is legally sufficient to support a finding that the insured signed it, but it is not essential that we find that he signed this statement for the reasons stated in our discussion of the third assignment of error.

The third assignment of error is that the court should have submitted to the jury the question of the validity and effect of the printed matter appearing on page 3 of the policy set out above. As we have said, the court's general finding is, of course, decisive of that question. There is no showing whatever that this printed matter on page 3 is not a part of the policy. It appears on the policy, which plaintiff filed as an exhibit to her complaint as the basis of her suit. There is no contention that the company issued any other policy on the life of the insured, and the policy sued on has been in the possession of the beneficiary since its issuance.

The modification on page 3 of the policy was no doubt made in response to the purported agreement of the insured which was alleged to have accompanied his application. But, whether this is true or not, the undisputed fact is that page 3 is a part of the policy issued by the company as sued on by the plaintiff, and expressly modifies paragraphs 5 and 12 appearing on page 2 thereof; and its plain provisions support the court's findings as to the sum recoverable thereunder.

The plaintiff admitted she had paid no extra premium, although she admitted knowing that this extra premium was required. Plaintiff admitted writing the following letter:

"Dardanelle, Ark., Sept. 1918.
"Louisiana State Life Co.

"This is to let you know that Horace Collins has been sent over seas. What are the terms of the extra payment? How much is the first payment, and when due? I am his sister and will try to keep up his policy until he returns?"

On the part of the company it was testified that a reply to this letter was sent advising the plaintiff that the extra premium would be $100. Plaintiff denied having received this letter, but admits that on September 22, 1919, she wrote a letter to the company in which she stated that "I did not know that there was an extra premium to be paid for overseas duty, for I have never read the policy, until I had heard it talked around last fall, so I wrote you to know, and by the time I recd. your ans. or soon after my brother was reported to have been severely wounded. I was trying to make the hundred dollars to deposit with the company."

The company had the right to charge "an extra premium at the established rate" for the increased hazard occasioned by the enlistment of the insured in the military service of the United States. *Nutt* v. *Security Life Ins. Co.* 142 Ark. 29; *Benham* v. *American Central Life Ins. Co.,* 140 Ark. 612; *Miller* v. *Illinois Bankers' Life Assn.,* 138 Ark. 442.

The testimony supports the finding that the insured was killed in action without having paid this increased rate, and the recovery was therefore properly limited to the legal reserve under the policy, as therein specified.

Judgment affirmed.